NO. PD-0955-15

IN THE COURT OF
CRIMINAL APPEALS OF TEXAS
AT AUSTIN, TEXAS

ORIGINAL

ROSS ALLEN HARTWELL

PETITIONER PRO SE

VS.

THE STATE OF TEXAS

RESPONDENT

FROM THE 390th JUDICIAL DISTRICT COURT OF TRAVIS COUNTY, TEXAS. CAUSE NUMBER D-1-DC-13-904031. AND THE THIRTEENTH COURT OF APPEALS. CORPUS CHRISTI, TEXAS, NO. 13-14-00087-CR

# PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

Comes now Petitioner Pro Se Ross Allen Hartwell, and files this, his Petition for Discretionary Review, in Compliance with the Texas Rules of Appellate Procedure. In response to Conviction AFFIRMATION only.

PETITIONER HEREBY WAIVES ORAL ARGUMENT DUE TO HIS LACK OF EXPIRIENCE AND SKILL NECESSARY FOR SUCH A NOBLE UNDERTAKING

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 16 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

SEP 16 2015

Abel Acosta, Clerk

Respectfully submitted,

ROSS ALLEN HARTWELL
Petitioner Pro Se
TDCJ/ID # 1893452
Bill Clements Unit
9601 Spur 591
Amarillo, TX. 79107-9606

i

# LIST OF ALL PARTIES

The following is a list of ALL the names and addresses of the parties with an interest in the outcome of this PETITION FOR DISCRETIONARY REVIEW FILING:

1.) Petitioner Pro Se

Ross Allen Hartwell
TDCJ/ID #1893452
Bill Clements Unit
9601 Spur 591
Amarillo, Tx. 79107-9606

2.) Respondant

State of Texas
Prosecuting Attorney
P.O. Box 13046
Austin, TX. 78711

3.) County Prosecutor

Travis County
District Attorney
Rosemary Lehmberg
Asst. D.A.
Angie Creasy
P.O. Box 1748
Austin, TX 78767

4.) Appellate Counsel
(Thirteenth Ct. of App.)
Only

Paul Evans
811 Nueces St.
Austin, TX 78701

5.) Judge (Trial)
(District Court)

Julie Kocurek
Bob Perkins (Ret.) (Sat for Proceeding)
390th District Court
Cr. Just. Center
509 W. 11th St. 78701
P.O. Box 1748
Austin, TX 78767-1748

ii

# TABLE OF CONTENTS

COVER . . . . . . . i

LIST OF ALL PARTIES . . . . . . ii

TABLE OF CONTENTS . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT . . iv

INDEX OF AUTHORITIES . . . . . v, vi, vii

STATEMENT OF THE CASE . . . . viii

STATEMENT OF PROCEDURAL HISTORY . . . ix, x

I. QUESTION PRESENTED FOR REVIEW - Was the Thirteenth Court 1
of Appeals decision regarding Petitioners Ineffective Assistance of Cansel
claim based on an unreasonable determination of the facts in light of the
evidence presented and was the decision contrary to clearly established
State and Federal Law?

ARGUMENT . . . . . . . 1-6

II. GROUND FOR REVIEW - The Thirteenth Court of Appeals sanctioning 7
of the 390th District Courts notion that lay opinions of the Complainant and
Eyewitness can be proffered as to what Petitioner saw or knew is in
direct conflict with Federal and Texas Rules of Evidence, Rules 701 and
702 and also challenges longstanding cases which define those rules.

ARGUMENT . . . . . . . 7-14

PRAYER . . . . . . . 14

APPENDIX A . . . . . . 15

CERTIFICATE OF SERVICE . . . . 16

# STATEMENT REGARDING ORAL ARGUMENT

Because of the nature of the questions presented and the circumstances of the particulars of this case, oral argument may be of great assistance to the Court. However, Petitioner will attempt to finalize his argument within this Petition for Discretionary Review. But should the Court grant the Review and subsequently determine that oral argument would assist it in resolving the Questions and Grounds presented, Petitioner requests to make an appearance, along with an Attorney of the Courts choosing for assistance in the matter, before the Court and present Oral Argument.

---

Note: A document filed pro se should be construed liberally. Humphrey v. Cain 120 F. 3d 526, at 530 n.2( 5th Cir. 1997); Erickson v. Pardus, 127 S.Ct. 2197 (2007).

---

Respectfully Requested,

Ross Allen Hartwell
Petitioner Pro Se
TDCJ/ID #1893453
Bill Clements Unit
9601 Spur 591
Amarillo, Texas 79107-9606

iv

# INDEX OF AUTHORITIES

## Federal Constitution

| | Page |
|---|---|
| Fifth Amendment | 12 |
| Sixth Amendment | 3,4,6 |

## Federal Statutes

| | |
|---|---|
| Civil Judicial Procedure Rules | 7 |
| Rules of Evidence Rule 701  28 U.S.C.A. | 7,14 |
| Rules of Evidence Rule 702  28 U.S.C.A. | 7,8 |

## Federal Cases

| | |
|---|---|
| Anders V. California, 386 U.S. 738 (1967) | 3 |
| Batson V. Kentucky, 106 S.Ct 1718 (1986) | 1 |
| Brechi V. Abrahamson, 113 S.Ct 1710 (1993) | 3 |
| Burgess V. Dretke, 350 F.3d 461 (5th Cir 2003) | 13 |
| Garland V. Maggio, 717 F.2d 199 (5th Cir 1983) | 4 |
| Gray V. Mississippi, 107 S.Ct 2045 (1987) | 4 |
| Green V. Johnson, 116 F.3d 1115 (5th Cir. 1997) | 4 |
| Hale V. Gibson, 227 F.3d 1298 (10th Cir. 2000) | 5 |
| In Re Winship, 397 U.S. 358 (1970) | 13 |
| Irvin V. Dowd, 366 U.S. 717 (1961) | 3 |
| Johnson V. Armontrout, 961 F.2d 748 (8th Cir 1999) | 5 |
| Massaro V. U.S, 155 L.Ed 2d 714 (2003) | 3,5 |
| Moore V. Johnson, 194 F.3d 586 (5th Cir 1999) | 1 |
| New York V. Hill, 120 S.Ct 659 (2000) | 5 |
| Patton V. U.S., 281 U.S. 276 (1930) | 6 |
| Profitt V. Waldron, 831 F.2d 1245 (5th Cir 1987) | 4 |
| Rose V Clark, 106 S.Ct. 3101 (1986) | 3 |
| Strickland V. Washington, 466 U.S. 668 (1984) | 1,3,4,5,6 |
| U.S V. Chavis, 772 F.2d 100 (5th Cir. 1985) | 8 |
| U.S. V. Izydore, 167 F.3d 213 (5th Cir 1999) | 4 |
| U.S. V. Rasmisel, 716 F.2d 301 (5th Cir 1993) | 4 |
| U.S. V. Ruppel, 666 F.2d 261 [1982] | 8 |
| U.S. V. Trevino, 992 F.2d 64 (C.A.5 (Tex)) [1993] | 3,4 |
| Virgil V. Dretke, 446 F.3d 598 (5th Cir 2006) | 4 |
| Ward V. Norris, 577 3d. 925 (8th Cir 2009) | 1 |
| Williams V. Taylor, 529 U.S. 362 (2000) | 1 |

## Texas State Statutes

| | |
|---|---|
| Code of Criminal Procedure § 21.02 | 13 |
| Code of Criminal Procedure § 21.03 | 13 |
| Code of Criminal Procedure § 35.15 (b) | 1 |
| Code of Criminal Procedure § 35.16 (b)(3), (c)(2) | 2 |

V

Code of Criminal Procedure § 35.22 . . . . . . . . . .2
Code of Criminal Procedure § 38.03 . . . . . . . . . .8
Penal Code § 1.07 . . . . . . . . . .12
Penal Code § 6.01 . . . . . . . . . .12
Penal Code § 6.02 . . . . . . . . . .8
Penal Code § 6.03 . . . . . . . . . .7,12,14
Penal Code § 8.05 . . . . . . . . . .12
Penal Code § 12.42 . . . . . . . . . .12
Penal Code § 29.01 . . . . . . . . . .12
Penal Code § 29.02 . . . . . . . . . .12
Penal Code § 29.03 . . . . . . . . . .5,7,8
Penal Code Article 1408 . . . . . . . . . .12
Rules of Appellate Procedure 66.3 (c)(d)(F) . . . . . . .1,7
Rules of Evidence 701 . . . . . . . . . .7,14
Rules of Evidence 702 . . . . . . . . . .7

## Texas Constitution

Article I § 10 . . . . . . . . . . .6

## Texas Cases

Aguilar v. State, 263 S.W.3d 430 (Tex. App.—1st Dist 2008) . . .12
Arcila v. State, 834 S.W.2d 357 (Tex. Crim. App. 1992) . . . .1
Boyd v. State, 513 S.W.2d 588 (Tex. Crim. App. 1974) . . . .7
Cambell v. State, 2 S.W.3d 729 (Tex. App.—14th Dist 1999) . . .3
Cooper v. State, 2 S.W.3d 90 (Tex. App—9th Dist 2000) . . .5,12
Doyle v. State, 875 S.W.2d 21 (Tex. App.—Tyler 1994) . . . .8
Ex parte Hawkins, 6 S.W.3d 554 (Tex. Crim. App 1999) . . . .12
Fairow v. State, 943 S.W.2d 895 (Tex. Crim. App 1997) . . . .7,8
Garza v. State, 213 S.W.3d 347 (Tex. Crim. App 2007) . . . .2
Hernandez v. State, 726 S.W.2d 53 (Tex. Crim. App. 1986) . . .4
Holloway v. State, 613 S.W.2d 497 (Tex. Crim. App 1981) . . .8
Holloway v. State, 666 S.W.2d 104 (Tex. Crim. App. 1984) . . .2
Howard v. State, 333 S.W.3d 137 (Tex. Crim. App. 2011) . . .14
Johnson v. State, 432 S.W.3d 552 (Tex. App.—6th Dist 2014) . .5
Jones v. State, No. 01-13-00920-CR (Tex. App. 1st Dist 2015) . .4
Jones v. State, 111 S.W.3d 600. (Tex. App.—Dallas 2003) . . .13
King v. State, 953 S.W.2d 266 (Tex. Crim. App. 1997) . . .13
Lane v. State, 763 S.W.2d 785 (Tex. Crim. App 1989) . . .12
Lewis v. State, 529 S.W.2d 550 (Tex. Crim. App. 1975) . . .14
Livingston v. State, 739 S.W.2d 311 (Tex. Crim. App. 1987) . .13
Lopez v. State, 343 S.W.3d 137 (Tex. Crim. App. 2011) . . .5
Menefield v. State, 363 S.W.3d 591 (Tex. Crim. App 2012) . . .2
Mowbray v. State, 788 S.W.2d 658 (Tex. App—Corpus Christi 1990) .7

Nash v. State, 664 S.W.2d 343 (Tex.Crim.App.1984) . . . . . .14

Petty v. State, 833 S.W.2d 145 (Tex.Crim.App.1992) . . . . . .12

Riley v. State, 28 S.W.3d 561 (Tex.Crim.App.2008) . . . . . .13

Robinson v. State, 16 S.W.3d 808 (Tex.Crim.App.2000) . . . . . .5

Rodriguez v. State, 336 S.W.3d 294 (Tex.App.—San Antonio 2010) . . . .2

Rodriguez v. State, 697 S.W.2d 463 (Tex.App.—San Antonio 1985) . . . .8

Spalding v. State, 505 S.W.2d 819 (Tex.Crim.App.1974) . . . . . .7

State v. Barbernell, 257 S.W.3d 248 (Tex.Crim.App.2008) . . . . . .13

Steve v. State, 614 S.W.2d 137 (Tex.Crim.App.1981) . . . . . .9

Thompson v. State, 9 S.W.3d 808 (Tex.Crim.App.1999) . . . . . .2,6

Thompson v. State, 650 S.W.2d 156 (Tex.App.—14th Dist.) . . . . .12

Vasquez v. State, 830 S.W.2d 948 (Tex.Crim.App.1992) . . . . . .4

Williams v. State, 235 S.W.3d 742 (Tex.Crim.App.2007) . . . . . .12

Winegarner v. State, 505 S.W.2d 303 (Tex.Crim.App.1974) . . . . . .9

## Blacks Law Dictionary

Mens rea . . . . . . . . . .8

Violence . . . . . . . . . .12

# STATEMENT OF THE CASE

On March 26th, 2012 at approximately 11:40 P.M. an incident occurred at the Popeyes Restaurant located at 9717 N. Lamar Blvd., Austin Texas. Christina Mormon (complainant) had just finished her closing duties, but before leaving the parking lot, she realized she'd forgotten something. After pulling her white 1996 Honda Odyssey, TX. License CM8-M483 into the handicap parking spot near the South entrance of the restaurant, she left her vehicle running as she went inside to retrieve her cigarette lighter.

Ross Hartwell (Petitioner) and Joshua Voight (Accomplice) were walking through the all but deserted Popeyes parking lot. After seeing the driverless vehicle with its engine running, the two decide to take it. As they commenced to back out of the parking space, with Petioner as the driver and accomplice the passenger, the Complainant had ran out of the restaurant directly to the passenger side of the vehicle. As the vehicle reversed, the complainant either fell or was knocked to the ground. (The Complainant testified to landing by the front bumper; The eyewitness [Alexis Blount] claimed she was caught under the passenger side as it reversed). The vehicle then drove Eastbound behind the restaurant through the drive-thru lane. Complainant who suffered serious bodily injury was dislodged from the vehicle as it went through the North side of the drive thru.

The next morning, while walking in the same neighborhood was Petitioner arrested. During the interrogation, Petitioner was clueless to anyone being around the vehicle whenever he backed out. After reversing, he noticed a couple of people running out of the restaurant and decided to abandon the idea. The last thing he saw as he turned toward the back seat of the vehicle in order to get his backpack was People or a Person coming to the Front of the vehicle. The accomplice leaned over and pressed the throttle causing the Petitioner to take control in order to leave the scene.

## STATEMENT OF PROCEDURAL HISTORY

On March, 27, 2012, Petitioner was arrested and after an interrogation lasting a little over three (3) hours, was formally charged with Aggravated Robbery. Bond was set at $70,000 and the charge indicted (# DI-DC-12-300564), June 14, 2012. Due to lack of information and an error with the Penal Code number, Petitioner was re-indicted (# DI-DC-13-90418), February 11, 2013, with new information added along with Corrected Penal Code and without dismissing the Former indictment, a $150,000 bond was set to run consecutively with the former bond.. The third and final indictment was Filed (# DI-DC-13-904031) March 27, 2013. The theft element (i.e. U.U.M.V.) from the Aggravated Robbery was brought forth and added as a second count thus creating a multiplicitious indictment. A new bond of $200,000 was stacked upon the other two.

Approximately one week before trial, Petitioner was informed Judge Kocerek, of whom had been assigned the case at its inception would not be following it through. Judge Perkins (Ret.) would sit for the trial.

On October 7, 2013 Petitioner stood silent, before a jury, as a plea to the charges presented and was convicted of the Aggravated Robbery with an affirmative Deadly Weapon Finding (October 10, 2013). On October 11, 2013 Petitioner plead Not True to the enhancements yet the jury found truth in two of them and subsequently sentenced Petitioner to Seventy (70) years TDCJID.

November 5th, 2013. in a timely. manner, Petitioners Motion For New Trial was Filed..His allegations of insufficient evidence and ineffective assistance of counsel were not entertained. Petitioners Appeal Brief, alleging ten errors, was Filed. Travis County District Attorneys office responded with the States Brief January 9, 2015. Petitioners Reply Brief concerning the Ineffective Assitance Counsel Claim was Filed June 11th 2015.

The Thirteenth Court of Appeals Affirmed in part and Reversed and Remanded in part on July 2, 2015. The First Enhancement For U.U.M.V. (# 1184755 263rd Judicial District Court, Harris County)* was Found to be illegal, thus reversing the trial courts judgement and remanding For a new trial on punishment. Petitioner, in a timely manner (per mail box rule July 12, 2015; File stamped July 20, 2015) Filed a pro se Motion For Rehearing in the Thirteenth Court of Appeals but was DENIED on the grounds that Petitioner is not entitled to hybrid representation in that Court. Petitioner Filed mailed out his Motion For Extention to File the Petition For Discretionary Review concerning the conviction Affirmation in this. (Texas Court of Criminal Appeals) court July 20, 2015. This Court GRANTED the extention July 27, 2015 until October 2nd, 2015.

ix

On July 30, 2015, The State Filed a P.D.R. on the sentence reversal. Petitioner also Filed a Motion to Reinstate the Motion For Rehearing (per Mailbox Rule) in the Thirteenth Court of Appeals August 5, 2015. Finally, Petitioner Files this Petition For Discretionary Review Challenging the Thirteenth Court of Appeals AFFIRMATION of the Conviction.

★ The charge (#D-1-DC-06-205389-A 390th Judicial Dist Court, Travis County) which created the 2nd Enhancement had been challenged through a writ of habeas corpus (WR-80,499-01) on Oct.7, 2013. It was DISMISSED by The TX Ct. of Cri. App. due to sentence being discharged. (Note: At the time of Filing, Petitioner was not suffering the collateral harm of which began a week later whenever the challenged charge was used as the 2nd Enhancement to the case before this Court.

X

# I. QUESTION PRESENTED FOR REVIEW

Was the Thirteenth Court of Appeals decision regarding Petitioners Ineffective Assistance of Counsel claim based on an unreasonable determination of the facts in light of the evidence presented and was the decision contrary to clearly established State and Federal Law? (Thirteenth Courts Opinion Appendix A p.7-11); (see Reporters Record Volume 6 pages 105-7; 145-157; 169-94; Volume 7 p. 41-2; 50-68; Volume 8 p.73-4; 85-6; 92-6; 100-1; 102-3; 117; 147; Supplemental Clerks Record 1 p. 3-11); (Rep Rec. States Ex.# 4-19, 38-9, 42-7, 57-8, 70-1 75-8); (RR14 SX 221)

Question is per T.R.A.A.P. Rule 66.3(c)(d)(F), Williams V. Taylor, 529 U.S. 362, 413 (2000), Ward V. Morris, 577 F3d 925, 936 (8th Cir 2009) and Arcila V. State, 834 S.W. 2d 357 (Tex. Cr. App 1992)

# ARGUMENT

"During the course of the trial, the State introduced a number of graphic and bloody photographs into evidence, including documentation of the Complainants extensive injuries." (Appellants Brief p 13); (RR13 SX # 4-19, 38-9, 42-7, 57-8, 70-1, 75-8; RR14 SX 221) Also, graphic testimony was given by an Austin Police Dept. Officer (RR7, p. 41-2), An E.M.T. (RR7; p.50-68), the Complainant (RR V.8 p 73-4, 85-6, 92-6, 100-01, 102-3, 117) and an eyewitness (RR8; 147).

In anticipation of the above information, "Trial Counsels presentation at Voir dire Fills 31 pages of transcripts. Over a third of her discussion with panelists dealt with the topic of 'serious photographs of some injuries or other evidence that might might be considered graphic and disturbing' and whether or not 'that type of serious evidence would keep them from being able to concentrate and look at all the evidence for what it is." (quote from Petitioners Appellants Brief p.44)(see RR6, 145-57).

When trial counsel sought to differentiate those who would be affected as jurors, panelist #2 (Mr. Rodriquez) was adamant about the fact he would not be able to be fair, impartial or objective if presented with such evidence. (RR6; 147-149) Panelists #3 (Leary), #8 (Popp), #20 (Kawa), #25 (Doss), and #28 (Rajeskar) all agreed with Rodriquez' opinion on this particular matter. All five were successfully challenged for cause by the defense. (RR6; 149-55, 169-75). Trial Counsel did not ask to speak with Rodriquez at the bench after voir dire. Trial Counsel did not challenge him for cause. Trial Counsel exercised only eight of the allotted ten peremptory strikes but did not use one on Rodriquez, who was then seated on the jury that convicted Appellant (Petitioner*) and (initially**) sentenced him to seventy years." (quoted from App. Brief p.46); (RR6; 169-94, Supp. Clerks Record 1, 3-11, see Tex. Code Crim. Proc § 35.15(b))

Also, "During the States presentation on voir dire, panelists were asked to pick what they felt was the goal of the criminal justice system: rehabilitation,

---

\* Petitioner and Appellant are one and the same within this cause

\*\* Petitioners sentence was reversed (see Appx. A p.25)

deterrence, punishment, or incapacitation. It is significant to note that Rodriguez chose punishment" (quoted from App. Brief p 49), (RR6; 105-9, ~~110-56~~).

Petitioner first claimed ineffective assistance of counsel in a Motion for New Trial, which was not entertained by the Trial Court. He then briefed the particulars in his appeal to the Thirteenth Court of Appeals. (No. 13-14-00087-CR, App. Brief p. 44-51).

The Court of Appeals points to _Garza_* and _Menefield_** to defer the claim because "The reasons for trial counsels conduct do not appear in the record, and it is possible that her conduct could have been grounded in legitimate trial strategy" The Court then gives an unreasonable example of what would be a sound strategy. (Appx. A p 11)

As an initial matter in response to the Courts example, Petitioner points out that "the Court must not engage in retrospective speculation" nor "speculate to attorney[s] strategy" _Thompson v. State_, 9 S.w.3d, 808, 813 (Tex. Crim. App 1999), _Rodriguez v. State_, 336 S.w.3d 294, 302 (Tex. App. S.A. 2010) and that a "measure of deference must not be watered down into a disguised form of acquiescence" _Strickland v. Washington_, 466 U.S. 668, 684 (1984). Nor should a court "fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all" _Moore v. Johnson_, 194 F3d 586, 604 (5th Cir 1999).

With the following argument, Petitioner asks this Court to consider the following. This is not a case where a potential trier of fact states they would give more credence to this or that type of evidence. The individual (venireman #9 Mr. Rodriguez) in this instance unequivocally stated and agreed he would be impartial, unfair and unable to consider any other evidence if shown graphic evidence or heard graphic testimony. (RR6; 147-9). Because of his inability to impartially consider any other evidence or testimony, Rodriguez "could not have been a fair and impartial juror" _Holloway v. State_ (Cr. App. 1984) 666 S.w. 2d 104, could not follow his oath as a juror, was incompetent to serve as a juror and was disqualified to be a trier of fact under these circumstances. (see _Tex. Code. Crim. Proc._ art 35.16 (b)(3), (c)(2), art 35.22 and _Batson v. Kentucky_, 106 S. Ct. 1718 (1986).

This is also not a situation where defense counsel had very few options and had to make a difficult decision ~~between~~ a whole pool of impartial venire-persons, nor is it a case to which counsel had used all of the given peremptory strikes. A gut feeling that Mr. Rodriguez would have been a good juror and was only attempting to shun duty should have at least brought forth further questioning or a bench conference in order to rehabilitate, yet defense counsel, prosecutor, nor Judge attempted to rehabilitate him. The Thirteenth Courts example of an

* _Garza v. State_, 213 S.w. 3d, 347-48 (Tex. Crim. App 2007)

** _Menefield v. State_, 363 S.w. 3d 591, 593 (Tex. Crim. App. 2012)

[ Emphasis' ~~and~~ Quotations added by Petitioner]          2

attorneys partiality toward a potential jurors facial expressions and attitude, or any other rationalization is an unreasonable consideration in whether or not to challenge, whenever said Venireman voices unequivocal unfairness and impartiality. It would be unimaginable to strategically pass up the given opportunities to remove Mr. Rodriguez from the venire, yet the manager and counselors of the 390th District Court, without question, did so, thus failing from the start of the trial, to provide for a fair adversarial process. (see Strickland, 466 U.S. at 696)

The Sixth Amendment requires that the accused have "counsel acting in the role of an advocate" in order to "ensure that [the] defendant has assistance necessary to justify reliance on the outcome of the proceeding". Anders v. Cal., 386 U.S. 738, 743 (1967); U.S. v. Trevino, 992 F.2d 64 (C.A.5 (Tex) 1993). In this case, the record plainly shows that Mr. Rodriguez could not "lay aside his impression or opinion and render a verdict based on the evidence presented in court". Irvin v. Dowd, 366 U.S. 717, 723 (1961). Petitioners counsel compromised her role of advocate by not objecting to Mr. Rodriguez, and his service on the jury essentially nullifies this courts "presumption that the judge or jury acted according to law". Strickland, 466 U.S. at 696

This case differs in comparison to the majority of the cites the Thirteenth Court relies on in determining its desire to "know the reasons behind counsels actions" (App. A, 11), because instead of being a simple procedural error, the issue at hand concerns a mistake or unreasonable decision that created a structural error "infect[ing] the entire trial process" and "render[ing #p Petitioners] trial fundamentally unfair." Brecht v. Abrahamson, 113 S. Ct. 1710 (1993); Rose v. Clark, 106 S. Ct. 3101 (1986). Petitioner has also shown his case differs from those the State cited in their previous brief. In those cases, "the juror in question mentioned only a probability of bias. In neither case did the panelist in question express him or herself as emphatically as Rodriguez did in the instant cause". (see No. 13-14-00087-CR States Brief p 24-5; Appellants Reply Brief p.4)

In the spirit of conserving Judicial resources, Petitioner is attempting to show this Court that under the circumstances presented, the direct appeal avenue is the correct one to persue his meritorious claim of ineffective assistance of counsel. The basis of this principle can be found in Massaro v. U.S., 155 L.Ed 2d 714 at 722 (2003), which states "we do not hold that ineffective assistance of counsel claims must be reserved for collateral review. There may be cases in which trial counsels ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal". Petitioner argues that when considering the present circumstances, letting Mr. Rodriguez go unchallenged or unquestioned, for any reason, "clearly indicates no reasonable attorney could have made such trial decisions". Cambell v. State, 2 S.w 3d 729, 734 (Tex. App 14th Dist 1999). See Also, "Under the facts of the case", not challenging or at least

3

asking rehabilitative questions "would not have been acceptable trial strategy." Vasquez V. State, 830 S.W. 2d 948 (Tex. Cr. App. 1992). That decision or omission "permeat[ed the] entire trial with obvious unfairness" and "to hold counsel ineffective is not speculation." Garland v. Maggio, 717 F2d 199, 206 (5th Cir 1992 1983); Vasquez, 830 S.W. 2d at 950-1. With this, Petitioner brings to the court that "It has been held that even if attorneys manner conducting a trial was 'Trial strategy... it can be so ill-chosen as to render trial fundamentally unfair..." U.S. v. Rasmisel, 716 F2d 301, 310 (5th Cir 1993); Green V. Johnson, 116 F3d 1115, 1122 (5th Cir 1997). Also, "Tactical decisions that give no advantage to a defendant are not reasonable and the court will not engage in presumption of reasonableness under these circumstances." Profitt V. Waldron, 831 F2d, 1245, 1248 (5th Cir. 1987). Defense Counsels sound strategy for potential jurors is abundantly clear per the available record. Any variance from that strategy was "so outrageous that no competant attorney would have engaged in it" Jones V. State, No. -01-13-00920-CR (Ct. of App. 1st Dist. 2015), Tex App. Lexis 3139. No explanation is needed as to why counsel would consider contradicting such a sound strategy. Counsels decision or omission deprived Petitioner Appellant not only of his constitutional right to be represented by Counsel but also his right to an impartial jury and to wit a fair trial. Any attempt to "justify [her] performance" in further proceedings whenever the "justifications [are] not evident on the record and presented for the first time... have little value. Thus respecting the Supreme Courts caution in Strickland that 'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation" Virgil V. Dretke, 446 F3d at 611 (5th Cir. 2006), Strickland, 466 U.S. at 689. Being that there is no explainable conduct by which would excuse Counsels actions, the direct appeal process, in this case, is the proper one, and to allow proceedings to continue past this Court would be a waste of Judicial resources.

Petitioner, in contention to the Thirteenth Courts assertion that "Isolated instances cannot deem counsel ineffective" (see Appx. A, 9),* defers to Vasquez V. State, 830 S.W. 2d at 951, in that "while a single error will not typically result in finding of ineffective counsel, an egregious error may satisfy the Strickland prongs on its own".** Petitioner argues that, in light of the circumstances presented, finding failing to challenge or strike Mr. Rodriguez Constituded egregious error because the "Basic purpose of right to Counsel is to ensure that Criminal defendents recieve a fair trial", And "[t]he Constidutional right of an impartial jury is so basic to a fair trial that its infraction can never be treated as harmless error." U.S. Constitution Sixth Amendment; U.S. v Izydore, 167 3d 213 (5th Cir 1999); U.Sv Trevino, 992 F2d 64 (5th Cir. 1993); Gray v. Miss., 107 S.Ct 2015 at 2047 (1987)

*By its own remarks, is not the Court making an ascertainment to the error being present?
**"(1) Counsels representation fell below an objective standard of reasonableness under prevailing professional norms and (2) the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687"; Hernandez V. State, 726 S.W. 2d 53, 56-7 (Tex. Crim. App. 1986).

By showing that no reasonable attorney would've let Mr. Rodriguez go unchallenged (and that this is a "rare case in which trial counsel's ineffectiveness is apparent in the record"), Petitioner has overcome the Thirteenth Courts assumption that "her conduct could have been granted in legitimate trial strategy." (App. A, 11), thus "the Appellate Court [may] address and dispose of the claim on direct appeal." Massaro v. U.S., 155 L.Ed 2d 714 at 722 (2003); Johnson v. State, 432 S.W. 3d 552 (Ct. of App. 6th Dist. 2014); Lopez v. State, 343 S.W. 3d 137 at 143 (Tex. Crim. App 2011); and Robinson v. State, 16 S.W 3d 808, 813 (Tex. Crim. App 2000).

Counsels Failure to challenge Mr. Rodriguez became an error satisfying both prongs of the Strickland standard whenever Rodriguez sat on the jury and convicted petitioner. Hale v. Gibson, 227 F 3d 1298, 1319 (10th Cir. 2000) (recognizing that prejudice results when defense counsel fails to attempt to remove from the jury a person who has been established on the voor dire to be biased; Johnson v. Armontrout, 961 F2d 748, 755 (8th Cir 1992) "trying a defendant before a biased jury is akin to providing him no trial at all. It constitutes a fundamental defect in the trial mechanism itself."

## SYNOPSIS AND PRAYER

The case at hand stems from an indicted charge of Aggravated Robbery by bodily injury and with a deadly weapon. Tex. Pen. Code § 29.03. "Generally, the offense of Agg. Robbery requires proof that the defendant assaulted the victim, and intended to obtain or maintain control of the victims property to or during the Assault and as such, state must prove a nexus between the assault and the theft, that is, that the assault occurred in order to facilitate the taking of the property." TX P.C. § 29.03, Cooper v. State, 29 S.W. 3d 90 (App. 9th Dist 2000).

By his own admission venireman #2 (Mr. Rodriguez) made it clear that if he were to sit as a juror, no other evidence besides that of an injury would be considered. (RR6, 147-49). He also gave the pro-prosecution answer of "punishment" as the goal of the criminal justice system. (RR6, 105-7). Petitioner points out that besides proof of an injury, there are other elements for a juror to consider and affirmatively find before a conviction can be had under TX.P.C. § 29.03. Evidence of an injury shows that an injury is present, not that an Agg. Robbery occurred. Mr. Rodriguez had no place whatsoever as a trier of fact on this or any other case where proof of an injury would play a role. Due to Petitioners Counsels unreasonably deficient performance of not challenging or striking Mr. Rodriguez, he had the opportunity and did sit on the jury. Mr. Rodriguez did then impartially ~~convict~~ and unfairly convict Petitioner while also administering the punishment he so sought from his position in the venire.

As for Petitioner being "deemed bound by the acts of his lawyer" per New York v. Hill, 120 S. Ct 659 (2000), this generally pertains to "what arguments

to persue, what objections to raise and what agreements to conclude regarding the admission of evidence." Never was this guiding principle meant to allow a court to be manifestly close-minded to blatantly harmful decisions or omissions by counsel, which not only on the surface but to their very depths create an unfair environment within said courts realm of responsibility. Strategy or no strategy, tactic or no tactic, the record in this case reflects the ineffective assistance claim and Petitioner should not be bound by the ineptitude. Nor should this Court be bound by giving all credence to counsels all the time and in every situation.

Finally, being that the plea bargain expirience is the only one Petitioner has had in dealing with the Justice System, he was completely in the hands of the attorneys representing him. The pre-trial, voir dire and trial process are complicated matters best left to the professionals. Any mistakes or failures during these procedures were unknown to him during this very confusing time. However, Petitioner reckognizes that he undoubtedly began this trial a one(1) over handicap. Petitioners "trial is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results" Strickland, 466 U.S. at 694.

Because Petitioner was not allowed a trial by a Constitutional Jury* per the U.S. and Texas Constitutions,** Petitioner prays that this Court reverse the Thirteenth Court of Appeals decision and Petitioner should, at the very least be granted a new trial. "Allowing this disposition alleviates unecessary judicial redundancy and burden on the trial courts of holding additional hearings in writ applications when no additional evidence is necessary to the ultimate disposition of the case." Thompson v. State S.W.3d at 817 (Meyers, J., dissenting)

* "A constitutional jury means 12 men as though that number has been specifically named, and it follows that when reduced to eleven, it ceases to be such a jury quite as effectively as though the number had been reduced to a single person." Patton v. U.S, 281 U.S. 276, 292 (1930)

** The constitution guarantees a fair and impartial jury under the Sixth Amendment to the U.S Constitution and Article I, §10 of the Texas Constitution.

6

## II. GROUND FOR REVIEW [per T.R.A.A.P. RULE 66.3(c)(d)(F)]

The Thirteenth Court of Appeals sanctioning of the 390th District Courts notion that lay opinions of the Complainant and Eyewitness can be proffered as to what or who Petitioner saw or knew is in direct conflict with the Federal and Texas Rules of Evidence, Rules 701 and 702 and also challenges longstanding cases which define those rules. (see Appx A, p. 15-20 for Courts opinion); (See Reporters Record Vol 8 p 119-20, 149-51 for subject matter complained)

## ARGUMENT

In order to be culpable, one must be aware. Tex. Pen. Code §6.03. In order to commit an Aggravated Robbery (Tex. Pen. Code §29.03) such as alleged in this case, the Petitioner must of been aware he was overcoming Complainants resistance by using the vehicle as a deadly weapon while also aware that the circumstances existed of which caused bodily injury to the complainant. He would have had to Known Complainant was present.

Because the witness' opinions of what or who Petitioner was aware of or knew can "never be based on personal Knowledge", a lay witness, per Federal and Texas Rules of Evidence Rules 701, 702, can only testify to the facts by which an opinion can be inferred. Fairow v. State, 943 S.W.2d 895 (Tex. Cr. App. 1997). It is solely up to the jury to come to its own collective "legal conclusions" of the ~~subjective~~ "actual subjective mental state" and of "guilt or innocence". Mowbray v. State, 788 S.W.2d 658 (Tx. App. Corpus Christi 1990); Boyd v. State, 513 S.W.2d 588 (Tex. Crim. App 1974); Spalding v. State, 505 S.W.2d 819 (Tex. Crim. App. 1974); and Winegarner v. State, 505 S.W.2d 303, 305 (Tex. Cr. App 1974).

The Federal (701(a)) and Texas Rules of Evidence Rule (701(1)) are common in that they both limit a lay opinion to one that is "rationally based on the witness' perception", and together they share a principle with rules (702) garnering testimony from an expert witness. That is, a witness may only give their views/principles relevant to the issue, leaving the trier of fact to apply them to the fact in question. If counsel doesn't believe the trier of facts cannot draw the requisite inference from the facts surrounding an opinion, then that counselor has failed to prove an issue." The rule assumes that the natural characteristics of the adversary system will generally lead to an acceptable result, since the detailed account carries more conviction than the broad assertion, and a lawyer can be expected to display his witness to the best advantage. If he fails to do so, cross-examination and argument will point up the weakness. If despite these considerations, attempts are made to introduce meaningless assertions which amount to little more than choosing sides, exclusion for lack of helpfulness is called for by the rule." Federal Rules of Evidence Rule 701(a)(b), 702(a)(b); Texas Rules of Evidence Rule 701(1)(2); Federal Civil Judicial Procedure Rules p. 462

7

The guiding case, (Fairow) in which the Thirteenth Court of Appeals cites to overrule Petitioners claim actually supports it in this instance. The Complainant (Ms. Morman) and Eyewitness (Ms. Blant) answers of "No dabt in my mind," "He (Petitioner) knew I was there", and "Yes, they knew" (RR8, 119-120, 149-151) are not only attempts to communicate the actual subjective mental state of the Petitioner, but they are direct and conclusive legal assertions to Petitioners "Knowledge" and 'Awareness'. To know or to be aware is the basis of mens rea* and also culminates within any of the three culpable mental states needed to prove the bodily injury element of Aggravated Robbery. (see TX. Pen. Code §6.02 and §29.03)

It is the law of the land that "if the trial court determines that a proffered lay-witness opinion is an attempt to communicate the actual subjective mental state of the actor, the court should exclude the opinion because it could never be base on personal Knowledge" Fairow, 943 S.w.2d at 899; (also see U.S. v. Ruppel, 666 F2d 261, reh. den. [1982] "Admission of opinion testimony about defendants state of mind is highly prejudicial and must be avoided." Fed. Rules of Evid. Rule 702, 28 U.S.C.A.; U.S. v. Chavis, 772 F2d 100 at 107 [5th Cir] 1985). Petitioners claim through Fairow is supported by Doyle V. State 875 S.w.2d 21 (Tex. App. Tyler 1994 no pet.) which states "While a witness cannot possess personal Knowledge of anothers mental state, he may possess personal Knowledge of facts from which an opinion regarding mental state may be drawn." Together these cases uphold the ideal of "It is fundamental to the notion of 'presumption of innocence' that the jury is in a better position removed from the emotional circumstances, to determine what happened in the individual cases. Tex. Code. Crim. Proc. Ann. art. 38.03. Thus, lay witness opinions as to ~~cout~~ culpable mental state are not helpful, but superfluous" Fairow 943 S.w.2d at 904. Also, "there is nothing to be gained by permitting a witness to proffer an opinion on a subject when any other person in the courtroom, any member of the jury, cold form an opinion on the issue equally and with the same degree of logic as the witness." Holloway V. State, 613 S.w.2d 497, 500 (Tex. Cr. App 1981).

Under the circumstances presented, for the complainant and eyewitness to affirmatively declare Petitioner knew the complainant was present is allowing an opinion on an ultimate fact. (see Rodriquez V. State, 697 S.w.2d 463, 468 [Tex. App. San Antonio 1985] "A witness is not allowed to give an opinion on an ultimate fact, as the jury is to determine questions of fact from all of the evidence and

* Mens rea - "guilty mind" - The state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime, mens rea is the second of two essential elements of every crime at common law... Blacks Law Dictionary

8

circumstances). In the case at hand, "the witness' opinion testimony was unnecessary and inadmissible" due to the fact that allowing the witness' to give their views of the situation surrounding the fact in question, while not allowing them to decide how Petitioner viewed the situation, grants leave to the jury to "be in possession of the same facts upon which [the] proffered opinion was based" so that "the jury could fully understand the matter" and with this information, "the jury could draw proper inferences and conclusions." Steve v. State, 614 S.W. 2d 137, 139 (Tex. Crim. App. 1981).

The perceptions of the witness' belong to them, just as the perception of the Petitioner belongs to him. This actuality in itself shows that the application of Rule 701 is personal and should be applied individually so that the trier of fact can subsequently follow along with what the witness is experiencing. By law and good common sense, perception and what it equates is not interchangeable. It is ruled by many different elements, none of which are shared equally by any two people witnessing or partaking of the same event. We can never be sure of what an individual saw or how that individual felt accurately reflects the incident. Just as in the case at hand, where the Complainants, Eyewitness, and accomplice gave diametrically opposing accounts of the incident. One cannot say what the other saw as this would destroy the job of the 'Trier of Fact'. (See RR8 for the three testimonials). Another example would be that it would seem if complainant was so close to the incident as she was, she would y at least saw a shadow of the driver, yet by her own perception she did not. (RR8; 82). It would be unfair for anyone to take the stand and opine or make a legally conclusive statement that she did see the driver, thus making up the minds of the jury for them. Neither she nor the eyewitness had any contact with the Petitioner, yet the 390th Court judged it appropriate for the two to conjecture Petitioners cognizance while guaranteeing his culpability. It has never been acceptable jurisprudence to allow one individual to testify through anothers eyes. By allowing, in this instance, the state to stack the deck with emotionally charged prejudicial lay opinions, given as fact, Petitioners hands became tied and the presumption of innocence dichotomy became choked by sympathetic threads running through the human spirit. The Courtroom is not a theater for Judges or representing attorneys to direct a drama toward their chosen endings. It is, however, a safe place where the accused and accuser can depend upon truth and integrity to assist justice in running its course. By encouraging the accuser to tell the others story as if they themselves were behind the senses of the accused, the separate functions of the two parties have been exchanged, hence placing the burden of proof upon the accused. A trial is about the circumstances of the 'Did Nots' and 'Did To's', not a back n-forth childrens declarative so back seat spat.

9

Here, the Prosecutor stepped over the line by extracting the two opinions of anything other than the circumstances. The Judge of the 390th District Court (Judge Perkins) abused his discretion by overruling the defenses objections to the opinions and the Thirteenth Court of Appeals should not have sanctioned any of the above behavior.

Irreparable harm came to bear by this abuse of discretion because without the two prejudicial opinions, the jury may have given more weight to the following exculpatory evidence of which showed the Petitioner did not 'know' of the Complainants presence (circumstance) in order to use the vehicle as a deadly weapon or cause the bodily injury to overcome the complainants resistance to the theft of the vehicle. 1. Complainant testified to running directly to the passenger side. (RR8; 72,84) [Note: Petitioner was charged as the driver]. 2. She attested to the incident happening at 11:00 p.m. (RR8;71), 3. the windows of the van being tinted (RR8; 109), 4. her rendering on the easel was of the passenger door closed whenever she ran up to the passenger side of the vehicle, 5. her voice not being demanding when stating "Hey, this is my car" (RR8;82), and 6. to her voice being the same as her courtroom voice when stating "Hey, this is my car." (RR8; p.82) [Note: Complainant was asked several times to 'speak up' during this testimony, even while microphoned/ amplified. (RR8;78,85,99)]. 7. Also, Complainant testified she never saw a driver and only assumed there was a "driver who put the vehicle in reverse" (RR8;82). [Note: Complainants testimony focused solely on the passenger (accomplice), it was the prosecutor who projected the Petitioners inclusion by repeatedly introducing plural pronouns throughout her questioning of the complainant. (RR8;79-82). 8. Complainant also stated that the vehicle went into reverse as soon as she arrived at the passenger door. (RR8; p106) and 9. that the incident happened very fast (RR8;115). Finally, the complainants reasons as to her conclusion of Petitioners awareness is illogical itself because after the van reversed, the rear of the vehicle was facing the closest exit. (RR V.8; p71, 112, 114 and RR13, SX 14,15). So, not only is the complainant painting an inaccurate picture of the scene, she was allowed to follow the inaccuracy with an illogical and rule infringing assumption.

More exculpatory evidence discerning Petitioners lack of awareness comes from the Eyewitness who also gave a prejudicial opinion featured on this argument. 10. She testified to the incident occurring after 11:30 (p.m.), (RR8;128), 11. to Complainant going directly to the passenger side (RR8;131,160), 12. to it all happening too fast (RR8;160), 13. that complainant got caught under the passenger side of the vehicle as it went into reverse (RR8;133,134,159,163), 14. Complainant was never in front of the vehicle (RR8;161-64), 15. and also seeing complainant 1/2 under the passenger side whenever the vehicle went into drive (RR8;163,164). This same witness testified to 16. not hearing Complainant say anything as Complainant ran up to or was at the passenger side (RR 8;135), 17. that she only heard

10

Complainant after she was on the ground ½ under the passenger side of the vehicle (RR8;164-165), and 18. that she herself was hollering at the same time complainant was hollering. (RR8;136,144-146).

The accomplice, in this matter also testified to evidence showing Petitioner was not aware of the complainant. He stated facts of 19. it being very dark (RR8; 225), 20. the parking lot lights were dim (RR8;245), 21. being unable to observe complainants race because of the darkness (RR8;224,225,229), 22. it all happening in under three (3) seconds (RR8; 251) and 22. the last time he saw complainant was whenever she fell beside the passenger side of the van (RR8;241,242).

Also, Petitioner asks this court to take notice that this same accomplice elaborately and unambiguously testified in great detail to the complainant opening the rear passenger sliding door of the van and yelling into it. (RR8; 223, 225, 226 x2, 227, 238 x2, 244, 245 and 246 x2). Accomplice mentions and/or agrees to this 'sliding door' fact no less than ten (10) times, yet the vehicle in question has no sliding doors whatsoever (see RR13; SX-106,114,128,129) and the complainant herself did not come close to corroborate this fiction. Since this testimony was not impeached and stood as fact, it compounded the harm inflicted by the complainants and eyewitness' prejudicial opinions.

Petitioner would also point out that between the complainant, eyewitness and accomplice (the 3 who were involved and testified at trial), the only corroboration in their respective testimonies were of facts disputing the States assertion to the Petitioners awareness of the complainant and to using a deadly weapon to cause a bodily injury for the purpose of a theft. (see RR 8 for complete test.)

Petitioner would also bring to the Courts attention that even more clarity to the culpability question could have been demonstrated if the parking lot video Detective Boline referred to eight (8) times during the interrogation were shown to the jury. (RR.Supp. Vol I p. 22, 25, 30, 32, 36, 40, 49, 58). In Expecting the video to be exculpatory, Petitioner constantly requested it for close to a year. The State would not provide it and finally reported that the cameras were not working the night of the incident. More light likely would have been shed if the Lead Detective (Vallejo) who directed the crime scene collections, first interviewed the eyewitnesses and conducted several interviews with the accomplice had, himself testified. Yet despite Petitioners Motion for Continuance on Grounds of Failure to comply w/ court orders and suprise, (CR3, 34-36) to accomodate for the Detectives schedule, he never testified and was not called as an impeachment witness. Also, even if he'd been available, the Court had tied the Petitioners hands concerning the most important questioning of all. That is, by the Courts granting the States Motion in Limine on the day the trial began, the Petitioner would not be able to ask questions or allude to any of the police officers or detectives opinions as to what charges

should or should not have been filed. (C.R. 3; 69-72 [#14])

For a conviction of Aggravated Robbery with a deadly weapon and causing bodily injury, in the present matter, the State must prove "#1 a theft or attempted theft occurred, #2 that violence* was used for the purpose of executing or escaping from the offense and #3 that a weapon (in this case a vehicle) was utilized to achieve an intended result." Petty V. State, 833 S.W.2d at 145 (Tex. Crim. App 1992). The "violence must be used specifically to overcome resistance to theft." "In proving causation", "violence used must be for the purpose of compelling acquiescence." Thompson V. State, 650 S.W. 2d 156, 158 (Tex. App. Houston 14th Dist. 1983, no pet); Lane V. State 763 S.W. 2d 785 (1989 TX. Cr. App); Vernons Texas Penal Code §29.02, .03 and Vernons Ann. P.C. art. 1408; Aguilar V. State [App. 1 Dist 2008] 263 S.W. 3d 430. "Robbery is a form of assault, rather than an aggravated form of theft offense V.T.C.A. §29.02; Ex parte Hawkins 6. S.W.3d 554 (Tx Crim 1999) [Note. In order to be convicted under penal code 29.03 one must first be guilty of 29.01 and 29.02] However, the "state must (also) prove a nexus between the assault and the theft..." Cooper V. State, 295 S.W. 3d 901 (App 9th Dist 2000). To be Intentionally, knowingly or recklessly culpable of causing the injury and using the weapon in order to facilitate the theft, as the state alleged in the indictment, it must be proven that the Petitioner was aware that the circumstances surrounding his conduct would cause the injury "and the defendant (petitioner) consciously disregarded that risk." Williams V. State, 235 S.W. 3d 742 (2007 Tex. Cr. App.); Tex Pen Code § 6.03, 12.42

Petitioner argues that in this case, the fact of there not being any proof of visual or physical contact between complainant and himself (other than the prejudicial opinions), he could not have been violently ~~resisting~~ to overcoming complainants resistance. Being that evidence is lacking that ~~Complts~~ Petitioner was aware or at least "evidence raises reasonable doubt that "Petitioner "voluntarily engaged in the conduct charged" the state should not have misled the jury by allowing the opinions of Petitioners awareness and the jury should have been "instructed to acquit" Tex. P.C. sec. 6.01(a) ["conduct" is defined as an "act" or omission and its accompanying mental state." Tx. P.C. ANN §§1.07(a)(8), 1.07(a)(1). "Because voluntary means absence of accidental act, or omission or possession, it is not fact that the state must prove in every case; rather the state need not prove voluntariness unless evidence raises issue of accident, in which state must ~~prove~~ disprove accident beyond reasonable doubt. V.T.C.A. Pen. Code §§6.01(a) 8.05; U.S.C.A. Const. Amend 5.]

---

*Violence - the use of physical force, usually accompanied by fury, vehemence, or outrage, especially physical force unlawfully exercised with the intent to harm. Blacks Law Dictionary

12

The State created its own awareness factor and nexus by adding, without evidence, to the indictment, the ruinous information complainant "attempted to stop him (petitioner)." This assumed statement, added to the second and third indictments is the corpus delicti of the states statutory charge; particularly alleging petitioners 'awareness' in order to overcome complainants resistance. This statement itself misleads the jury into believing complainant had contact with the Petitioner, thus inferencing Petitioner was aware of complainant and assaulted her in order to overcome the (faux) resistance. The qualifying but unjustly added statement created a "hybrid error"* which spread through this trial, culminating and rearing its head through many different errors.

Petitioners interrogatory claim that he didn't see anyone coming until he backed out (R.R. Supp. 1; p. 73+74) was in reference to the eyewitness as it was clear by the States case that complainant was on the ground after the vehicle reversed. In covering for the created and unproven statement only mentioned in the indictment (never was evidence given in trial that complainant "attempted to stop" petitioner), the State compelled the complainant and eyewitness to make a legal conclusion as opinion, concerning petitioners awareness. To cover the fact that Petitioner was only aware of people** coming after the vehicle reversed, the state in closing misstated the law by stating that it doesn't matter if it were Alexis Blount (Eyewitness) or Christina Morman (complainant) Petitioner saw. (R.R. 10; 81). Petitioner reminds the court he was not charged for a crime against the Eyewitness. Petitioner was charged with committing a violent crime against the complainant to which the evidence points he was never aware of.

The Court abused its discretion by allowing the two prejudicial opinions complained of in this Ground. Petitioner has proven that the "error had a substantial and injurious effect or influence in determining the jurys verdict" and has shown that the "error should be regarded because it affected my (petitioners) substantial rights." King v. State, 953 S.W. 2d 266, 271 (Tex. Crim. App. 1997); Jones v. State, 111 S.W. 3d 600, 608 (Tex. App Dallas 2003 pet. ref'd); TX. R. App. Proc 44.2(b)

By not proving complainant "attempted to stop" the Petitioner, the State never 'proved' the indictment per the TX. Code. Crim. Proc. ANN Art. 21.03. Since the information in the charging instrument never came to bear as fact and the court allowed the complainant and eyewitness to state a "legal conclusion as to Petitioners awareness, petitioner, in violation of his due process rights was required to "look beyond the face of the indictment". Riley v. State, 28 S.W. 3d 56 (Tex. Crim. App. 2008); TX. C. C.P. ANN Art 21.02(7), 21.04, 21.11; Livingston v. State, 739 S.W. 2d 311 (Tex. Crim. App. 1987) cert. den., State v. Barbernell, 257 S.W. 3d 248 (Tx. Cr. App 2008); and In Re Winship, 397 U.S. 358 (1970).

* Burgess v. Dretke, 350 F3d 461 (5th Cir 2003) Hybrid Error
** The record reflects the Manager of the Restaurant and the Boyfriend of the Eyewitness was present.

13

There has, however been another "novel" robbery case in which this court has ruled on that concerns no interaction "between the accused and the purported victim." Howard v. State, 333 S.W. 3d 137 (Tex.Crim.App.2011). In Howard, it was found, defendants "Knowledge of what results his actions are reasonably certain to cause" was inferred by the "fear" he Knew the shotgun would induce. Even with circumstance and casual inference, the tabula rasa between Howard and the case before the court at this time, cannot be adequately filled. Not only did the Petitioner not bring a weapon in order to induce fear or cause a bodily injury, he was also not aware of the complainant, which in y in itself infers he most certainly was not aware that his actions were "reasonably certain to cause" the bodily injury or place complainant in fear so that she would have cause to part with the vehicle.

Finally, at most, the complainants and eyewitness' statements surrounding the prejudicial opinions 'may' have inferred that the Petitioner 'ought' to have been aware of the complainant and risk, but even if so, that standard applies only to negligence. Tex.Pen.Code §6.03(a), Nash v. State, 664 S.W.2d 343,345 (Tex.Crim.App.1984) Lewis v. State, 529 S.W.2d 550, 553 (Tex.Crim. App 1975). Negligence is not a culpable mental state applicable to Aggravated Robbery. TX.P.C. §29.03

## PRAYER

Petitioner has most assuredly shown his case to be of the "rare" variety in which trial counsels ineffectiveness is apparent and that the 390th District Court departed from the Tex. Rules of Evid. Rule 701 by overruling Petitioners timely objection. Due to being judged by an impartial juror and presumed guilty by the prejudicial opinions, he has also shown he was not granted a fair trial. Because of these discrepancies, the Petitioner Prays this, the Texas Court of Criminal Appeals, reverses the Thirteenth Court of Appeals decision and at the very least remand this Conviction for a new trial.

WHEREFORE, PREMISES CONSIDERED, Petitioner prays this Court will VACATE the July 2, 2015 "Opinions and Judgement" on the CONVICTION AFFIRMATION of the Thirteenth Court of Appeals, attached here to as Appendix-A. Petitioner prays for relief consistant with the relief sought here in.
Respectfully Submitted on this 1 day of September, 2015

Ross Allen Hartwell
Ross Allen Hartwell
Petitioner Pro Se

14

# APPENDIX A.

FILE COPY



**CHIEF JUSTICE**
ROGELIO VALDEZ

**JUSTICES**
NELDA V. RODRIGUEZ
DORI CONTRERAS GARZA
GINA M. BENAVIDES
GREGORY T. PERKES
NORA L. LONGORIA

**CLERK**
CECILE FOY GSANGER

# Court of Appeals

## Thirteenth District of Texas

NUECES COUNTY COURTHOUSE
901 LEOPARD, 10TH FLOOR
CORPUS CHRISTI, TEXAS 78401
361-888-0416 (TEL)
361-888-0794 (FAX)

HIDALGO COUNTY
ADMINISTRATION BLDG.
100 E. CANO, 5TH FLOOR
EDINBURG, TEXAS 78539
956-318-2405 (TEL)
956-318-2403 (FAX)

*www.txcourts.gov/13thcoa*

July 2, 2015

Hon. Paul M. Evans
Attorney at Law
811 Nueces Street
Austin, TX 78701
* DELIVERED VIA E-MAIL *

Hon. Angie D. Creasy
Assistant District Attorney
P. O. Box 1748
Austin, TX 78767-1748
* DELIVERED VIA E-MAIL *

Hon. Rosemary Lehmberg
District Attorney
P. O. Box 1748
Austin, TX 78767
* DELIVERED VIA E-MAIL *

Re:      Cause No. 13-14-00087-CR
Tr.Ct.No. D-1-DC-13-904031
Style:    Ross Allen Hartwell v. The State of Texas

Enclosed please find the opinion and judgment issued by the Court on this date.

Very truly yours,

Cecile Foy Gsanger, Clerk

CFG:dot
Enc.
cc:   State Prosecuting Attorney (DELIVERED VIA E-MAIL)
      390th District Court, Travis County (DELIVERED VIA E-MAIL)
      Hon. Amalia Rodriguez-Mendoza, District Clerk (DELIVERED VIA E-MAIL)
      Hon. Billy Ray Stubblefield, Presiding Judge, 3rd Administrative Judicial Region
      (DELIVERED VIA E-MAIL)



# THE THIRTEENTH COURT OF APPEALS

13-14-00087-CR

Ross Allen Hartwell
v.
The State of Texas

On Appeal from the
390th District Court of Travis County, Texas
Trial Cause No. D-1-DC-13-904031

## JUDGMENT

THE THIRTEENTH COURT OF APPEALS, having considered this cause on appeal, concludes that the judgment of the trial court should be affirmed in part and reversed and remanded in part. The Court orders the judgment of the trial court AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

We further order this decision certified below for observance.

July 2, 2015



# NUMBER 13-14-00087-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ROSS ALLEN HARTWELL,                                              Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

## On appeal from the 390th District Court of Travis County, Texas.

## OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Opinion by Justice Rodriguez

Appellant Ross Allen Hartwell appeals from a judgment rendered by the 390th District Court of Travis County, Texas.[1] A jury found Hartwell guilty of aggravated robbery with an affirmative deadly weapon finding. *See* TEX. PENAL CODE ANN. § 29.03

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

(West, Westlaw through 2015 R.S.).   The jury found two enhancement paragraphs to be true and assessed punishment of seventy years' imprisonment.   Hartwell raises ten issues on appeal.   We affirm in part and reverse and remand in part.

## I.   BACKGROUND

Christina Morman, the complainant, testified at trial that on March 26, 2012, she was working the night shift at a Popeye's restaurant in Austin, Texas.   She finished her shift at 11 p.m. and was in the process of leaving the Popeye's premises when she realized that she forgot her cigarette lighter.   She parked her van near the front entrance of the restaurant, left her engine running, and went back inside to get her lighter.   Upon returning to her vehicle she saw a person in the front passenger seat of her van.   Morman ran to her van, put her hand on the door, and said "[h]ey, this is my car."   The driver then reversed out of the parking space in such a way that the front end of the vehicle struck Morman and knocked her to the ground.   The driver paused for a few seconds before running Morman over.   Morman was dragged underneath the vehicle for approximately 246 feet before being dislodged.   Co-worker Alexis Blount witnessed the event and corroborated Morman's testimony at trial.

Co-defendant Joshua Voigt testified that he was with Hartwell when they stole Morman's vehicle.   Voight was in the passenger seat, and Hartwell was in the driver's seat.   Voight saw Morman run to the van and testified that she tried to open the rear passenger sliding door   He heard her "cuss", "yell at [them] to stop", and say, "[h]ey, this is my car."   When Hartwell reversed the vehicle and knocked Morman to the ground, Voigt saw Morman lying on the ground in front of the vehicle.   When Hartwell put the vehicle in drive and ran over Morman, Voigt testified that he heard a thump and felt the

2

wheels go over Morman's body. He also testified that he could hear Morman screaming.

Detective Steve Boline with the Austin Police Department interviewed Hartwell that same day. The trial court admitted a redacted video of the custodial interview into evidence. The recording showed that Hartwell initially denied any involvement but later admitted to stealing Morman's vehicle. Hartwell admitted that he was the driver and that he put the van in reverse and backed out of the parking space. Hartwell claimed he decided to abandon the robbery upon seeing people running towards him after he reversed out of the parking space. He claimed Voigt reached over and grabbed the door, preventing him from exiting the vehicle. Hartwell also claimed that he was pressing on the brake, but Voigt reached down and depressed the gas pedal with his hand. Hartwell admitted during the interview that he saw someone in front of the vehicle but denied knowledge that he ran over anyone.

The jury found Hartwell guilty of aggravated robbery with an affirmative deadly weapon finding. See id. Hartwell elected to have the jury decide punishment and entered a plea of "not true" to the enhancement allegations put forth by the State. The jury found two enhancement paragraphs to be true and assessed a term of seventy years' imprisonment, and the trial court sentenced Hartwell accordingly. This appeal followed.

## II. FIFTH AMENDMENT RIGHT TO COUNSEL

By his first issue, Hartwell contends that he invoked his right to counsel during his custodial interview and that any statements made after he invoked his right to counsel were inadmissible.

### A. Standard of Review & Applicable Law

In reviewing claims concerning the admission of statements made as the result of

3

custodial interrogation, we conduct the bifurcated review articulated in *Guzman v. State*. *See Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012) (citing *Guzman*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We afford almost total deference to the trial court's rulings on questions of fact and on questions involving the application of law to fact that turn upon a witness' credibility and demeanor.[2] *Id.* at 79. We review de novo the trial court's rulings on questions involving the application of law to facts that do not turn upon a witness' credibility and demeanor. *Id.* However, as the *Pecina* Court explained, in deciding whether an accused has "actually invoked his right to counsel," the Supreme Court has dictated that we use an objective standard "to avoid difficulties of proof and to provide guidance to officers conducting interrogations." *Id.* (citing *Davis v. United States*, 512 U.S. 452, 458–59 (1994)).

When a defendant asks for a lawyer, questioning must cease until counsel has been provided or the defendant initiates further communication with the police. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). Once a suspect has invoked his right to counsel, no subsequent exchange initiated by the police can serve to undermine the clarity of the invocation. *State v. Gobert*, 275 S.W.3d 888, 894–95 (Tex. Crim. App. 2009).

However, before a duty to terminate an interrogation arises, a defendant's request for counsel must be clear—the police are not required to attempt to clarify ambiguous or equivocal remarks. *Davis v. United States*, 512 U.S. 452, 461–62 (1994); *Pecina*, 361 S.W.3d at 79. The accused must unambiguously request counsel during a custodial

---

[2] Because the trial court did not enter findings of fact, we will imply necessary findings in support of the ruling if they are supported by the evidence. *See, e.g., State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

4

interrogation. *Pecina*, 361 S.W.3d at 79. To unambiguously request counsel, the accused "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459. "A statement either is such an assertion of the right to counsel or it is not." *Id.* We view the totality of circumstances from the viewpoint of the objectively reasonable police officer conducting a custodial interrogation. *Id.* at 458–59; *Pecina*, 361 S.W.3d at 79.

## B. Discussion

Detective Boline interviewed Hartwell after he was arrested for the instant offense. Hartwell waived his *Miranda* rights[3] and agreed to speak with Detective Boline. Though Hartwell initially denied any knowledge of the incident, the following exchange occurred during the interrogation:

Hartwell: Okay. What—what would you do—I know it's hard for you to put yourself in this situation but—

Det. Boline: Try me.

Hartwell: Should I—should I call that attorney friend of mine to see what he thinks?

Det. Boline: That's a decision you have to make. I mean, I can't—I can't answer that for you.

Hartwell: I mean, even in most (inaudible) anybody's willing to—I mean, I'd be willing to let anybody in also with—with— with me and my lawyer or—or me—he's not my lawyer, he's just a friend of my attorney but—

Det. Boline: Let me ask you this, was he there?

Hartwell: My attorney?

---

[3] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

Det. Boline: Yeah, was he there that night?

Hartwell: No.

Det. Boline: So what is he going to be able—I mean, this is your call. I'm not gonna try and talk you out of one way or another; if you want to call him, that's fine, but you and I will not be able to talk again and—and I'm—and this is—this is—

Hartwell: See that's what I mean. I mean you're nice and—and—

Det. Boline: No, no, no, no.

Hartwell: —you're great but—

Det. Boline: They're not gonna let me talk to you. Would I want to come down—I can come down and visit with you but I'm not gonna be able to help you try and help yourself. Does that make sense? This is weighing—this is weighing heavy on you. It's not gonna go away. The only thing you can do at this point is to try and help yourself out, and by—by that, I mean explaining your side of it.

Hartwell continued to talk to Detective Boline and went on to admit his involvement in stealing Morman's vehicle. He also wrote two statements regarding the events of the night in question—those statements, along with a redacted version of his oral interview—were admitted into evidence at trial.

We must initially determine whether Hartwell's statements to Detective Boline constituted an unambiguous invocation of his right to counsel. *See Pecina*, 361 S.W.3d at 79. The Supreme Court in *Davis* found Davis's statement that "maybe [he] should talk to a lawyer" was not a request for counsel. 512 U.S. at 461–62. The Court stated it was "unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect *might* want a lawyer." *Id.* at 462. The court of criminal appeals has also determined that a suspect's statement that he "should have an attorney" was not a clear request for counsel. *See Davis v. State*, 313 S.W.3d 317, 341 (Tex. Crim. App. 2010).

6

In deciding that the above statement was not an unequivocal request for counsel the court of criminal appeals determined "appellant's statement was not in the form of a request nor did appellant expressly say that he wanted a lawyer." *Id.*

Hartwell agrees that his question to Detective Boline, "should I maybe call my attorney friend and see what he thinks," was not an unequivocal and unambiguous request for counsel. However, Hartwell contends that his question regarding counsel, considered in context with the remainder of the conversation, was an affirmative invocation of his right to counsel. Yet the conversation that followed Hartwell's question regarding an attorney created even more ambiguity because Hartwell then stated that it was not even his attorney, just "a friend of [his] attorney."

The trial court correctly noted that Hartwell has no constitutional right to talk to a friend of his attorney and ruled that either there was no invocation of counsel or, in the alternative, that it was equivocal. We agree with the trial court's ruling. Hartwell's comment was similar to the comment in *Davis v. State* in that Hartwell used the word "should." *See id.* Hartwell recognized that having an attorney was an option, but did not actually make a request for an attorney to be present. *See id.* Hartwell did not unequivocally request an attorney such that an objectively reasonable police officer would understand that he had invoked his fifth-amendment right to counsel. *See Pecina,* 361 S.W.3d at 79. The trial court did not err in admitting Hartwell's oral and written statements into evidence at trial.

We overrule Hartwell's first issue.

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

By Hartwell's second issue, he contends that he was not afforded effective

7

assistance of counsel because of an alleged error during jury selection. Specifically, he contends that his trial counsel failed to challenge for cause or request a peremptory strike to remove a venireman who had affirmatively stated he could not remain objective if shown graphic evidence.

## A.    Standard of Review & Applicable Law

Both the Federal and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051 (West, Westlaw through 2015 R.S.). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense.[4] *Id.*; *Wert v. State*, 383 S.W.3d 747, 752 (Tex. Crim. App. 2012). Failure to satisfy either prong defeats an ineffective assistance claim. *Strickland*, 466 U.S. at 697. In applying the *Strickland* test we consider the totality of the representation and the particular circumstances of the case to determine whether counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To satisfy *Strickland's* first prong, the appellant must identify acts or omissions of counsel that allegedly were not the result of reasonable judgment. *Strickland*, 466 U.S. at 690. A defendant must overcome the strong presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *Garza v. State*, 213

---

[4] Texas adopted the *Strickland* test in *Hernandez v. State*. *See* 726 S.W.2d 53 (Tex. Crim. App. 1986) (en banc).

8

S.W.3d 338, 347–48 (Tex. Crim. App. 2007); *see also Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc). If the reasons for counsel's conduct at trial do not appear in the record and it is possible that the conduct could have been grounded in legitimate trial strategy, an appellate court will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal. *Garza*, 213 S.W.3d at 348; *see also Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (holding that "[a]n ineffective-assistance claim must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim."). Direct appeal is usually an inadequate vehicle for raising such a claim. *Menefield*, 363 S.W.3d at 592–93.

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *Wert*, 383 S.W.3d at 753. Finally, "[i]t is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Id.* Instead, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant must show that counsel's errors were so serious that he was essentially not functioning as counsel. *Id.* (citing *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995) (en banc)). "To warrant reversal when trial counsel has not been afforded an opportunity to explain his reasons, the challenged conduct must be so outrageous that no competent attorney

9

would have engaged in it." *Roberts v. State*, 220 S.W.3d 521, 533–34 (Tex. Crim. App. 2007).

To satisfy *Strickland's* second prong, the appellant must establish a reasonable probability that, but for counsel's errors, the result would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

## B. Discussion

Hartwell contends that trial counsel's failure to strike Mr. Rodriguez, venireman number two, caused him to receive ineffective assistance of counsel. In response to a question asked regarding his ability to maintain objectivity in light of graphic photographic evidence, Rodriguez stated that he could get "easily overwhelmed" which could "prevent [him] from being objective . . . cloud [his] judgment and maybe distract [him.]" Rodriguez was neither challenged for cause nor peremptorily stricken. Instead, Rodriguez was empanelled on the jury that subsequently found Hartwell guilty. Other veniremen also testified that graphic photographs would be problematic for them and were successfully challenged for cause by trial counsel.

Hartwell's appellate counsel filed a motion for new trial in the trial court. In that motion Hartwell raised ineffective assistance of counsel as a basis for a new trial. His motion did not, however, create a record regarding trial counsel's reasons for not striking Rodriguez or whether trial counsel's failure to strike Rodriguez was a part of her trial strategy. Hartwell's motion for new trial did not brief the ineffective assistance of counsel claim or provide any facts supporting his contention.

10

The reasons for trial counsel's conduct do not appear in the record, and it is possible that her conduct could have been grounded in legitimate trial strategy. *See Garza,* 213 S.W.3d at 348; *see also Menefield,* 363 S.W.3d at 593. For example, Hartwell's trial counsel could have observed Rodriguez's facial expressions and attitude during voir dire and determined he was an acceptable juror. Without the benefit of a record, we cannot know the reasons behind counsel's actions and the record does not affirmatively demonstrate that Hartwell's claim is meritorious. *See Menefield,* 363 S.W.3d at 593; *Garza,* 213 S.W.3d at 347–48. Hartwell did not meet *Strickland's* first prong so we will defer to counsel's decisions and deny relief on Hartwell's ineffective assistance claim. [5] *See Garza,* 213 S.W.3d at 348; *see also Menefield,* 363 S.W.3d at 593.

We overrule Hartwell's second issue.

## IV. ADMISSION OF EVIDENCE

By his third, fourth, fifth, and sixth issues, Hartwell challenges the admission of evidence before the jury. Hartwell contends by his third issue that the trial court abused its discretion when it admitted a dash-cam video containing hearsay statements before the jury. By his fourth issue, Hartwell contends the trial court erred in allowing "victim impact" testimony before the jury during the guilt-innocence phase of trial. Finally, by his fifth and sixth issues, Hartwell challenges the trial court's admission of lay-opinion testimony by the complainant and a witness to the accident.

### A. Standard of Review

---

[5] A proper record is best developed in a habeas corpus proceeding or in a motion for new trial hearing. *Jensen v. State,* 66 S.W.3d 528, 542 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

11

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State,* 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Sandoval v. State,* 409 S.W.3d 259, 281 (Tex. App.—Austin 2013, no pet.). A trial court abuses its discretion only if its decision "lies outside the zone of reasonable disagreement." *Tillman,* 354 S.W.3d at 435; *Sandoval,* 409 S.W.3d at 281.

## B.    Admission of Alleged Hearsay Statement

Hartwell contends that the trial court erred when it admitted the dash-cam video recording taken at the scene of the crime. The video contained a portion of the first responding officer's in-car video. Hartwell moved to suppress the evidence, arguing that the video was not relevant and in the alternative that if it was relevant, it was highly prejudicial. The trial court determined that the video was relevant and, after applying the balancing test pursuant to rule 403, overruled Hartwell's objections and admitted the evidence. *See* TEX. R. EVID. 403.

On appeal, Hartwell contends that the audio contained hearsay statements, including remarks such as "I guess you got hit when someone tried to take her car away from her," and "someone tried to take her car and ran back over her and took her car." The State noted that Hartwell failed to object to the video on hearsay grounds.

Preservation of error is a systemic requirement on appeal. *Blackshear v. State,* 385 S.W.3d 589, 590 (Tex. Crim. App. 2012). We will not address the merits of an issue that has not been preserved for appeal. *Id.* at 591. To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context. TEX. R. APP. P. 33.1(a)(1); *Clark v. State,* 365 S.W.3d 333, 339 (Tex.

12

. Crim. App. 2012). At trial, before the State offered the dash-cam video recording, Hartwell's counsel moved to suppress the video on the basis it was irrelevant and unfairly prejudicial pursuant to Texas Rules of Evidence 401 and 403, respectively. *See* TEX. R. EVID. 401, 403. The trial court overruled both objections. Hartwell did not object on the basis of hearsay. "Grounds of error urged on appeal must comport with objections made at trial or the error is not preserved." *Denison v. State,* 651 S.W.2d 754, 762 (Tex. Crim. App. 1983) (en banc). Consequently, Hartwell's complaint about alleged hearsay statements in the dash-cam recording was not preserved for appellate review. *See* TEX. R. APP. P. 33.1.

We overrule Hartwell's third issue.

## C. "Victim Impact" Testimony

Hartwell contends that the State improperly elicited "victim impact" testimony in the guilt-innocence phase of the trial when the prosecutor asked Morman whether her children were able to recognize her at the hospital. Hartwell objected to the question on the basis that it was "impermissible" and that it constituted "victim impact" evidence. The trial court overruled his objection, and Morman testified that her children did not recognize her when they first saw her at the hospital.

Victim-impact evidence is evidence concerning the effect of the crime on the victim and the victim's family after the crime occurs. *Reynolds v. State,* 371 S.W.3d 511, 525 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *see Haley v. State,* 173 S.W.3d 510, 517 (Tex. Crim. App. 2005) ("Victim-impact evidence is evidence concerning the effect the victim's death will have on others, particularly the victim's family members. . . ."). "Victim impact testimony is irrelevant at the guilt-innocence phase of a trial because it

13

does not tend to make more or less probable the existence of any fact of consequence with respect to guilt or innocence." *Reynolds,* 371 S.W.3d at 525 (quoting *Love v. State,* 199 S.W.3d 447 456–57 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd)).

We must initially determine whether Morman's testimony that her children did not recognize her at the hospital was merely "victim impact" testimony. Upon Hartwell's objection, the trial court asked the State its purpose for asking the question. The State responded that the question went to the extent of Morman's injuries, not the effect those injuries had on her children. The State further clarified that it would not be asking questions regarding whether the children had nightmares after the incident. The trial court overruled Hartwell's objection, and Morman answered "no." The State moved on to another line of questioning.

Morman testified regarding the extent of her injuries; she did not testify regarding the effect that the crime had had on her life or how the incident had affected her and her family. *See Reynolds,* 371 S.W.3d at 525–26; *Mathis v. State,* 67 S.W.3d 918, 928 (Tex. Crim. App. 2002) (allowing testimony regarding the "day to day" medical care the victim needed after the commission of the crime). The State had the burden to prove that Morman suffered serious bodily injury as a result of Hartwell's actions—the State's question regarding the extent of her injuries was relevant to the issues in the case and did not address either Morman's character or effects of the crime on either her or her family. *See Love,* 199 S.W.3d at 456–57; *Mathis,* 67 S.W.2d at 928.

We therefore conclude that Morman's testimony does not constitute inadmissible victim-impact evidence. Thus, the trial court did not abuse its discretion in permitting this testimony.

14

We overrule Hartwell's fourth issue.

## D.    Lay Opinion Testimony

By his fifth and sixth issues, Hartwell challenges the admission of lay opinion testimony that he contends was not based on the testifying witnesses' own perceptions. Specifically, Hartwell contends that the witnesses, Morman and Blount, testified impermissibly that Hartwell knew Morman was there when he initially struck her with the vehicle and subsequently ran her over. [6]

Admission of lay-opinion testimony is controlled by Texas Rule of Evidence 701. When conducting a rule 701 evaluation, the trial court must decide:   (1) whether the opinion is rationally based on perceptions of the witness; and (2) whether it is helpful to a clear understanding of the witness' testimony or to a determination of a fact in issue. TEX. R. EVID. 701; *Fairow v. State,* 943 S.W.2d 895, 898 (Tex. Crim. App. 1997) (en banc). The initial requirement that an opinion be rationally based on the perceptions of the witness is itself composed of two parts.   *See* TEX. R. EVID. 701; *Fairow,* 943 S.W.2d at 898.   "First, the witness must establish personal knowledge of the events from which his opinion is drawn and, second, the opinion drawn must be rationally based on that knowledge."   *Fairow,* 943 S.W.2d at 898 (citing WENDORF, SCHLUETER & BARTON, TEX. RULES OF EVIDENCE MANUAL, § VII (4th ed. 1995)).

Rule 701 requires the proponent of lay-opinion testimony to establish, as a predicate, that the witness has personal knowledge of the events upon which his opinion is based.   *See id.*   Personal knowledge will generally come directly from the witness'

---

[6] Hartwell's fifth issue challenges Morman's lay opinion testimony, and his sixth issue challenges Blount's lay opinion testimony.

senses. *Id.; see, e.g., Smith v. State*, 683 S.W.2d 393, 404 (Tex. Crim. App. 1984). An opinion will satisfy the personal knowledge requirement of rule 701 if it is an interpretation of the witness's objective perception of events—i.e., his own senses or experience. *Fairow*, 943 S.W.2d at 898–99; *Doyle v. State*, 875 S.W.2d 21, 23 (Tex. App.—Tyler 1994, no pet.).

After meeting the preliminary perception requirement, the trial court must then determine if the opinion is "rationally based on that perception" to satisfy the first prong of the rule 701 analysis. *Id.* at 899–900. An opinion is "rationally based on perception" if it is an opinion that a "reasonable person could draw under the circumstances." *Id.* at 900 (citing GOODE, WELLBORN & SHARLOT, 2 TEX. PRACTICE GUIDE TO THE TEX. RULES OF EVIDENCE: CIVIL AND CRIMINAL, § 701.2). A determination that the witness' opinion is rationally based on his perception satisfies the second prong of the first step of the rule 701 analysis. *See id.*

The second prong of the analysis for determining admissibility under rule 701 is a determination that the opinion is helpful to the trier of fact in either understanding the witness's testimony or determining a fact in issue. *Id.* There is not a "bright line" indicating when an opinion is helpful. *Id.* This consideration is especially prudent when the opinion concerns culpable mental state. *Id.*

### 1. Morman's Lay Opinion Testimony

In the present case, Morman testified regarding the factual events leading to the incident in question. In response to a question asking why she believed Hartwell knew she was there, she testified:

> Because I was audible as I approached the car, I said, "Hey, this is my car," and this guy, the way he reversed out of that parking spot, he was getting

16

out of there for a reason, and it was because I was standing there on the side of the car. I mean, obviously he didn't have anywhere to go or he wasn't in too big of a hurry if he decided to take the long way out of the parking lot. I mean, I know that parking lot, and I know that there are better and easier ways to get out of the parking lot if you are in a hurry. There is no reason to take the back of the parking lot and come back around just to get to the exit to the street when the exit was actually facing—actually behind the car. I mean it pretty much seems like he took a detour around the parking lot. He knew I was there.

She had previously testified that: (1) she approached the car from the front; (2) she attempted to or did grab the passenger door; (3) she was laying in front of the driver's side of the vehicle before it struck her; (4) she was screaming; (5) there was a pause between the time she was initially struck and knocked down and when she was run over.

We first look to the first part of the 701 analysis. As a preliminary matter, we find that the State established the predicate that Morman had personal knowledge of the events upon which her testimony was based. *See Fairow*, 943 S.W.2d at 898–99; TEX. R. EVID. 602, 701. She actually saw the events to which that she testified. *See Fairow*, 943 S.W.2d at 898; *Smith*, 683 S.W.2d at 404.

The second phase of the first prong of the 701 analysis requires us to determine whether Morman's perception of the facts—i.e., that Hartwell knew she was there—is one that a reasonable person could draw under the circumstances. *Fairow*, 943 S.W.2d at 899. Morman testified that she directly approached the vehicle from the front, that she spoke out loud that the vehicle was hers, that she approached the passenger door and put her hand on it, and that the manner in which Hartwell reversed and the path he took to drive away was consistent with his knowledge that she was present. We determine that, based on Morman's first-hand factual perceptions, a rational person could form the opinion that Hartwell knew that she was present. *See id*

17

Rule 701's second requirement is that Morman's opinion help the jury determine a fact in issue: in this case, the mens rea requirement for the assault charge. *Id.; see* TEX. R. EVID. 701. Hartwell's mens rea was contested at trial—Hartwell contended that he had no knowledge that he ran over Morman. The State was required to establish that Hartwell acted with at least a reckless mens rea to obtain a conviction for aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.02 (West, Westlaw through 2015 R.S.). To that end, Morman's eye-witness testimony of the action and her perceptions of the event were helpful in assisting the jury determine whether Hartwell knew Morman was present when he hit her. Morman's opinion, summing up her testimony, could help the jury make their final factual determination regarding Hartwell's mental state. *See Osbourn v. State,* 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) (explaining that a witness' testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations).

We determine Morman's opinion testimony complied with the personal knowledge and helpfulness requirements of Texas Rule of Evidence 701. *See Fairow,* 943 S.W.2d at 898–900; TEX. R. EVID. 701. The trial court did not abuse its discretion by allowing Morman's opinion testimony.

### 2.  Blount's Lay Opinion Testimony

By his sixth issue, Hartwell challenges the admission of Blount's lay opinion testimony. Blount's testimony was similar to Morman's: both testified to the events immediately preceding the incident in question and opined that Hartwell knew Morman was present when Hartwell ran her over.

Blount specifically testified to the following: (1) Morman approached the vehicle

18

from the front; (2) Morman approached the vehicle's passenger side; (3) the passenger window was rolled down; (4) Morman placed her arms inside the passenger window; (5) Blount heard Morman screaming and crying "help" and "stop" loudly; (6) Blount was screaming "stop" and "what the f—" very loudly while running behind the vehicle; and (7) Hartwell drove around the building through the drive-through. Blount testified that there was no doubt in her mind that Hartwell knew that someone was there.

Again, we first determine whether Blount's opinion that Hartwell "knew someone was in front of the vehicle" was rationally based on her perceptions. *See Fairow,* 943 S.W.2d at 898. Preliminarily, we find that the State established the predicate that Blount had personal knowledge of the events upon which her testimony was based because she testified that she actually saw the event take place. *See* TEX. R. EVID. 602, 701; *Fairow,* 943 S.W.2d at 898; *Smith,* 683 S.W.2d at 404.

We now determine whether Blount's perception of the facts is one that a reasonable person could draw under the circumstances. *See Fairow,* 943 S.W.2d at 899. Blount testified that she saw Morman approach the vehicle and put her arms inside it, that while Morman had her arms inside the vehicle the van reversed, knocking her to the ground, that the window was open and both Blount and Morman were screaming loudly, and that Blount chased the vehicle. We determine that Blount's first-hand factual perceptions would allow a rational person to form the opinion that Hartwell knew someone was present. *See id*

The second requirement for admissibility under rule 701 requires that Blount's opinion help the jury. *Id.; see* TEX. R. EVID. 701. As previously discussed, Hartwell's mens rea was disputed at trial and the State had to establish that Hartwell acted with at

19

least a reckless mens rea to obtain a conviction for aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03. To that end, Blount's eye-witness testimony and her perception of the event were helpful in assisting the jury determine whether Hartwell knew Morman was present when he hit her. Blount's opinion summed up her testimony and was a rational conclusion from the facts based on her personal knowledge. *See generally Osbourn*, 92 S.W.3d at 535.

We determine Blount's opinion testimony complied with the personal knowledge and helpfulness requirements of Texas Rule of Evidence 701. *See* TEX. R. EVID. 701; *Fairow*, 943 S.W.2d at 898–900. The trial court did not abuse its discretion by allowing Blount's opinion testimony.

We overrule Hartwell's fifth and sixth issues.

## V. INCLUSION OF VOLUNTARY INTOXICATION INSTRUCTION

By his seventh issue, Hartwell contends that the trial court erred when it included a voluntary intoxication instruction in the jury charge because the evidence did not support it.

### A. Standard of Review and Applicable Law

A claim of jury-charge error is governed by the procedures set forth in *Almanza v. State.* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc) (op. on reh'g), *overruled on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988). We must first determine whether the trial court erred in its submission of the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If error exists and appellant properly objected at trial, reversal is required if "some harm" resulted, i.e., if the error was "calculated to injure the rights of the defendant." *Id.* (quoting *Almanza*, 686 S.W.2d at

20

171). If appellant failed to object, error must be "fundamental," and reversal will result only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Id.* (quoting *Almanza*, 686 S.W.2d at 171).

"Texas law has long held that the trial court must charge the jury fully on the law applicable to every issue raised by the evidence, whether such evidence be produced by the State or the defense, and whether it is strong or feeble, unimpeached or contradicted." *Taylor v. State*, 856 S.W.2d 459, 470 (Tex. App.—Houston [1st Dist.] 1993), *aff'd*, 885 S.W.2d 154 (Tex. Crim. App. 1994). "Further, the trial court must give instructions that are applicable to every legitimate deduction from the evidence." *Id.; Gilmore v. State*, 666 S.W.2d 136, 156 (Tex. App.—Amarillo 1983, pet. ref'd). If the trial court determines the evidence raises an issue and a charge on such issue is properly requested, then the trial court must give a charge on that issue. *Taylor*, 856 S.W.2d at 470; *Gilmore*, 666 S.W.2d at 156.

## B. Discussion

In this case, the proper inquiry requires us to determine whether trial evidence raised a voluntary intoxication issue, therefore warranting an instruction.[7] *See Taylor*, 856 S.W.2d at 470; *Gilmore*, 666 S.W.2d at 156. The State admitted a video of Hartwell's custodial statement to Detective Boline. In that statement, Hartwell made numerous references to drinking alcohol on the night in question. Twice Hartwell told Boline that he was not "that impaired." He also admitted to drinking beer with Voigt the evening of the incident, and he stated that Voigt's wife provided more beer than he

---

[7] "A voluntary intoxication instruction is appropriate if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions." *Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009).

21

anticipated. We find this evidence was sufficient to support the trial court's voluntary intoxication instruction. *See Taylor*, 856 S.W.2d at 472–73; *Williams v. State*, 576 S.W.2d 507, 510 (Tex. Crim. App. 1978) (finding the voluntary instruction proper when the only evidence tending to show intoxication was appellant's statement that he had been drinking at the time of the offense and had had too much to drink. though appellant's comments were not supported by any other evidence at trial). The State requested an instruction supported by the evidence—the trial court was duty bound to include the instruction in the charge and did not err in so doing. *See Taylor*, 856 S.W.2d at 470; *Gilmore*, 666 S.W.2d at 156.

We overrule Hartwell's seventh issue.

## VI. ENHANCEMENT ERROR

By his eighth issue, Hartwell contends that the evidence was legally insufficient to support the use of a prior felony conviction for purposes of enhancement as a habitual offender. Specifically, Hartwell contends that his prior conviction for the unauthorized use of a motor vehicle does not qualify for enhancement pursuant to section 12.42(d) of the Texas Penal Code. *See* TEX. PENAL CODE. ANN. § 12.42(d) (West, Westlaw through 2015 R.S.).

### A. Standard of Review and Applicable Law

"A claim regarding sufficiency of the evidence need not be preserved for review at the trial level and is not waived by the failure to do so." *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001). On appeal, Hartwell challenges the sufficiency of the evidence to support one of the indictment's enhancement paragraphs, not the inclusion of that paragraph itself. Thus, he can raise this issue on appeal even though he did not

22

object to the paragraph until after the jury returned a verdict of guilty. *See Tomlin v. State,* 722 S.W.2d 702, 705 (Tex. Crim. App. 1987).

We test the sufficiency of the evidence via the standard set forth in *Jackson v. Virginia* and against the allegations contained in a hypothetically correct jury charge. 443 U.S. 307 (1979); *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). These standards apply irrespective of whether the appellant attacks the sufficiency of the evidence underlying the current conviction or the "affirmative findings necessary to sustain the imposition of an enhanced punishment." *Young v. State,* 14 S.W.3d 748, 750 (Tex. Crim. App. 2000). When reviewing the legal sufficiency of the evidence at punishment, we view all the evidence in the light most favorable to the verdict to see whether a rational fact-finder could find the essential elements of the crime beyond a reasonable doubt. *Id.*

## B. Discussion

In the instant case, Hartwell's conviction was enhanced by a finding that he was a habitual offender. The relevant "habitual offender" subsection of the Texas Penal Code provides the following:

> [I]f it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years. A previous conviction for a state jail felony punishable under *Section 12.35(a)* may *not* be used for enhancement purposes under this section.

TEX. PENAL CODE ANN. § 12.42(d) (emphasis added). The State had the burden to prove, beyond a reasonable doubt, that appellant committed the primary offense, as well as the

23

two enhancement offenses. *See Ex parte Augusta,* 639 S.W.2d 481, 484–85 (Tex. Crim. App. 1982), *overruled on other grounds, Bell v. State,* 994 S.W.2d 173 (Tex. Crim. App. 1999); *Williams v. State,* 980 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

Thus, for the State to show that Hartwell was subject to punishment as a two-time habitual offender, it was required to show beyond a reasonable doubt that before commission of the primary offense—aggravated robbery—Hartwell had been finally convicted of two felonies that were subject to enhancement under section 12.42(d). *See id.* § 12.42(d). For proof of the enhancement the State offered a prior judgment into evidence.[8] The prior judgment indicated that Hartwell had pled guilty to the offense of the unauthorized use of a vehicle—a state jail felony—and had been sentenced pursuant to section 12.35 of the penal code. *See id.* § 12.35. Section 12.35 of the Texas Penal Code provides a range of punishments applicable for an individual convicted of a state jail felony. *See* TEX. PEN. CODE ANN. § 12.35(a)–(c) (West, Westlaw through 2015 R.S.).

However, the judgment on Hartwell's prior conviction did not specify whether he was punished under subsection (a) or (c) of section 12.35. There was no other evidence produced at trial that indicated whether he was punished pursuant to subsection (a) or (c). This is important because section 12.42(d) provides that if his prior conviction was under section 12.35(a), it may not be used for enhancement purposes. *See id.* at § 12.42(d). The State admits that it is impossible to tell from the record whether the prior conviction in paragraph one was sufficient to enhance Hartwell's sentence into a habitual

---

[8] Hartwell does not contest the judgment on the second prior felony conviction that was used to support his enhancement.

24

range of punishment. *See* Tex. Penal Code Ann. § 12.42(d).

Because there is no evidence in the record establishing that Hartwell's prior conviction for unauthorized use of a vehicle was eligible to be utilized to enhance Hartwell's sentence, we find the evidence was legally insufficient to support the enhanced sentence pursuant to section 12.42(d) of the Texas Penal Code. *See id.*

We sustain Hartwell's eighth issue and do not reach Hartwell's remaining issues contesting his punishment. *See* Tex. R. App. P. 47.1.

## VIII. Conclusion

Having determined that no error occurred at the guilt stage of trial, but holding that there is insufficient evidence to support the jury's finding of true to the first enhancement allegation, we affirm in part, and reverse in part the trial court's judgment and remand for a new trial on punishment.[9]

NELDA V. RODRIGUEZ
Justice

Publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
2nd day of July, 2015.

---

[9] Generally, when there is legally insufficient evidence to support a conviction as alleged in the indictment, we reverse and render the judgment that should have been rendered. *See* Tex. R. App. P. 43.2(c), 51.2(d); *Burks v. United States*, 437 U.S. 1, 16–18 (1978); *Greene v. Massey*, 437 U.S. 19, 24–25 (1978); *Clewis v. State*, 922 S.W.2d 126, 133–34 (Tex. Crim. App. 1996). In this case, however, only the jury's decision on punishment is affected by the lack of evidence to support the enhancement paragraph. Thus, we will reverse the judgment and remand for a new trial on the issue of punishment only. *C.f.,* Tex. Code Crim. Proc. Ann. art. 44.29(b) (West, Westlaw through 2015 R.S.); *Dixon v. State*, 932 S.W.2d 567, 571 (Tex. App.—Tyler 1995, no pet.) (relying on article 44.29(b) and holding that reversal and remand for new punishment was required where there was insufficient evidence to support punishment due to lack of plea to enhancement allegations).

25